[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes to the court on plaintiff Glastonbury Bank and Trust's Application for a Prejudgment Remedy and Temporary Injunction against the defendants arising out of loans made by the bank which are now in default. The initial underlying obligation was a note supporting a revolving loan agreement, signed by John Lewis as a corporate officer, for the provision of funds which eventually totaled $600,000 for the benefit of Surevest Limited (hereafter SL), an independent insurance agency. The defendants John Lewis and Albina Lewis, husband and wife, executed a guaranty which personally obligated them in the event of Surevest Limited's default.
Certain renegotiations occurred when this initial loan went into default, which resulted in the execution of new obligations and the provision of additional security by the defendants SL and John Lewis. By way of additional security, the defendant SL pledged its customer lists, its goodwill, and its "general intangibles" to the plaintiff through a security agreement, and the CT Page 883 defendant John Lewis who was the rainmaker at Surevest Limited signed a "non-competition agreement."
The problem that now presents itself is that these new obligations in the principal amount of $180,000 are now in default, and the plaintiffs allege that John Lewis has essentially allowed Surevest Limited to become dormant while actively assisting a second corporation, the defendant Surevest Financial Corporation (SFC) of which he, until recently, was an officer and employee or consultant, to take over substantially all of the profit-making business affairs of Surevest Limited.
The court heard two days of evidence on this matter and received memoranda from both sides on the applicable law. In addition, at the hearing, the defendants presented evidence relating to counterclaim, in which they assert that all of the defendant's troubles are the result of the plaintiff's breach of a further agreement to provide additional monies to the defendant. The court is satisfied that regardless of the interlocutory posture of the case at this stage, the parties were all fully heard to an extent greater than is common for the preliminary relief requested.
The evidence supports the plaintiff's claims that the notes are in default. Further the evidence is clear that John Lewis set about to breach the non-competition clause through the use of his energies to take a fledgling insurance agency of which his adult daughter Kathleen Lewis Harwell was a principal and build it, for all intents and purposes, into a thriving business. The evidence supports the conclusion that it is largely through his efforts after his execution of the non-competition agreement that Surevest Financial Corporation became the successful company that it is today. The evidence further supports the conclusion that he assisted in the conversion of Surevest Limited's general intangibles, customer lists, and goodwill to Surevest Financial Corporation, despite the agreements with the plaintiff, and that Surevest Financial, which occupies the same premises as Surevest Limited, was well aware of the benefits being conferred on it and participated in these transfers.
The court does not credit the evidence offered by the defendants in support of their counterclaim.
It remains then for the court to determine what temporary relief is in order. As the court has determined that there is probable cause to sustain the validity of the plaintiff's claims CT Page 884 and that a judgment will be rendered in plaintiff's favor, the plaintiff is entitled to a prejudgment remedy. Furthermore to prevent continuing interference by the defendant John Lewis and SFC in violation of the non-competition and security agreements and to provide for the continuing viability of the collateral in Surevest Limited, the plaintiff is entitled to a temporary injunction.
PATTY JENKINS PITTMAN, JUDGE